IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

PATRICIA M. COTTER,                          Civil No. 08-6159-AA
                                                  OPINION AND ORDER

       Plaintiff,

   vs.

MICHAEL J. ASTRUE,
Commissioner of Social Security,

       Defendant.
_____

Kathryn Tassinari
Mark Manning
Harder, Wells, Baron & Manning, P.C.
474 Willamette, Suite 200
Eugene, OR 97401
    Attorneys for plaintiff

Kent Robinson
Acting United States Attorney
District of Oregon
Adrian L. Brown
Assistant United States Attorney
1000 S.W. Third Avenue, Suite 600
Portland, Oregon 97204-2902

David J. Burdett
Special Assistant U.S. Attorney
Social Security Administration
701 Fifth Avenue, Suite 2900 M/S 901
Seattle, Washington 98104-7075
    Attorneys for defendant

1 - OPINION AND ORDER

AIKEN, Judge:

Claimant, Patricia M. Cotter, brings this action pursuant to the Social Security Act (the "Act"), 42 U.S.C. §§ 405(g) and 1383(c)(3), to obtain judicial review of a final decision of the Commissioner denying her application for disability insurance benefits ("DIB") under Title II of the Act. For the reasons set forth below, the Commissioner's decision is affirmed in part, reversed in part, and remanded for further proceedings.

## BACKGROUND

Born in 1967 (Tr. 85[1]), claimant completed 11 years of schooling and subsequently earned a GED. Tr. 713-14. Claimant has past work experience as a child monitor, home health aide, nurse assistant, bartender, and waitress. Tr. 713. Claimant applied for DIB on June 11, 2003, alleging disability as of September 4, 2002. Tr. 52.

The Commissioner denied claimant's application initially and upon reconsideration. Tr. 24-25. On February 2, 2006, an Administrative Law Judge ("ALJ") held a hearing. Tr. 687-718. On August 2, 2006, the ALJ found claimant not disabled under the Act. Tr. 23. On April 3, 2009, the Appeals Council denied claimant's request for review, making the ALJ's decision the final decision of the Commissioner. Tr. 5.

---

[1]"Tr." refers to indicated pages of the official transcript of the administrative record filed on January 2, 2009 (Doc. 14).

2 - OPINION AND ORDER

## STANDARD OF REVIEW

This court must affirm the Secretary's decision if it is based on proper legal standards and the findings are supported by substantial evidence in the record. <u>Hammock v. Bowen</u>, 879 F.2d 498, 501 (9th Cir. 1989). "Substantial evidence means more than a mere scintilla but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." <u>Andrews v. Shalala</u>, 53 F.3d 1035, 1039 (9th Cir. 1995). The court must weigh "both the evidence that supports and detracts from the Secretary's conclusions." <u>Martinez v. Heckler</u>, 807 F.2d 771, 772 (9th Cir. 1986). However, the ALJ is responsible for determining credibility and resolving conflicts and ambiguities in the record. <u>Magallanes v. Bowen</u>, 881 F.2d 747, 750 (9th Cir. 1989). Thus, the ALJ's rational decision must be upheld even if the evidence is susceptible to more than one rational interpretation. <u>Id.</u>

## DISABILITY ANALYSIS

The initial burden of proof rests upon the claimant to establish disability. <u>Howard v. Heckler</u>, 782 F.2d 1484, 1486 (9th Cir. 1986). To meet this burden, claimant must demonstrate an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected . . . to last for a continuous period of not less than 12 months. . . ." 42 U.S.C. § 423(d)(1).

3 - OPINION AND ORDER

The Secretary has established a five-step sequential process for determining whether a person is disabled. Bowen v. Yuckert, 482 U.S. 137, 140 (1987); 20 C.F.R. §§ 404.1502, 416.920. First, the Secretary determines whether a claimant is engaged in "substantial gainful activity." If so, the claimant is not disabled. Yuckert, 482 U.S. at 140; 20 C.F.R. §§ 404.1520(b), 416.920(b).

In step two, the Secretary determines whether the claimant has a "medically severe impairment or combination of impairments." Yuckert, 482 U.S. at 140-41; see 20 C.F.R. §§ 404.1520(c), 416.920(c). If not, the claimant is not disabled.

In step three, the Secretary determines whether the impairment meets or equals "one of a number of listed impairments that the Secretary acknowledges are so severe as to preclude substantial gainful activity." Id.; see 20 C.F.R. §§ 404.1520(d), 416.920(d). If so, the claimant is conclusively presumed disabled; if not, the Secretary proceeds to step four. Yuckert, 482 U.S. at 141.

In step four, the Secretary determines whether the claimant can still perform "past relevant work." 20 C.F.R. §§ 404.1520(e), 416.920(e). If the claimant can work, she is not disabled. If she cannot perform past relevant work, the burden shifts to the Secretary. In step five, the Secretary must establish that the claimant can perform other work. Yuckert, 482

U.S. at 141-42; <u>see</u> 20 C.F.R. §§ 404.1520(e) & (f), 416.920(e) & (f).  If the Secretary meets this burden and proves that the claimant is able to perform other work existing in the national economy, she is not disabled.  20 C.F.R. §§ 404.1566, 416.966.

## THE ALJ'S FINDINGS

At step one, the ALJ found claimant had not engaged in substantial gainful activity since the alleged onset date.  Tr. 15.  At step two, the ALJ found claimant had the following severe impairments: binaural hearing loss; lumbar spine degenerative disc disease (history of myocardial infarction and congestive heart failure); leg edema; narcotic dependence; history of headaches; hepatitis C; probable asthma or chronic obstructive pulmonary disease; affective disorder; and anxiety-related disorder.  <u>Id.</u>  At step three, the ALJ found claimant's combination of impairments did not meet or medically equal any of the listed impairments.  Tr. 16.

The ALJ then determined claimant's residual functional capacity ("RFC"[2]).  Specifically, the ALJ found claimant could sit for 4-6 hours per day (for up to two hours at a time), stand for 3-4 hours per day (for no more than one hour at a time), walk up to 1-2 hours per day (for no more than 30 minutes at a time), and limit carrying to no more than 20 pounds.  Tr. 17.  The ALJ

---

[2]The RFC is the most a claimant can do in a work setting, despite any limitations.  20 C.F.R. § 404.1545(a)(1).

also found that although claimant's medically determinable
impairments could reasonably be expected to produce the alleged
symptoms, claimant's statements concerning the intensity,
persistence, and limiting effects of those symptoms were not
entirely credible.  Id.

Using these findings, at step four the ALJ found claimant
was unable to perform any past relevant work.  Tr. 22.  At step
five, the ALJ found claimant could perform the following
occupations, each existing in significant numbers in the national
economy: assembler; microfilm document preparer; and bench
assembler.  Tr. 23.  Thus, the ALJ found claimant was not
disabled under the Act.  Id.

### DISCUSSION

Claimant alleges three errors: 1) the ALJ failed to give
clear and convincing reasons for rejecting the opinion of Dr.
Brandt; 2) the ALJ failed to give clear and convincing reasons
for rejecting claimant's testimony; and 3) the ALJ failed to
prove that claimant retains the ability to perform other work in
the national economy.  Due to these errors, claimant requests
the court reverse the ALJ's decision and remand the case for
payment of benefits, or, in the alternative, remand the case for
further proceedings.

//

//

6 - OPINION AND ORDER

1.  <u>Dr. Brandt's Opinion</u>

    Generally, the opinions of treating physicians are given
more weight than the opinions of examining physicians. <u>Lester v.</u>
<u>Chater</u>, 81 F.3d 821, 830 (9th Cir. 1995). Similarly, the
opinions of examining physicians receive more weight than the
opinions of nonexamining physicians ("NEP"). <u>Id.</u> The
uncontradicted opinion of an examining physician may only be
rejected for clear and convincing reasons. <u>Id.</u> If contradicted,
the ALJ may reject the opinion of an examining physician by
providing "specific and legitimate reasons that are supported by
substantial evidence in the record." <u>Id.</u> at 830-31.

    On October 16, 2003, Dr. Darin Brandt examined claimant at
the request of the agency. Tr. 225. Dr. Brandt reviewed
claimant's cardiology records. <u>Id.</u> Dr. Brandt completed a
medical source statement in which he stated:

>     The claimant can be expected to stand and walk for
> two hours during an eight-hour workday. The claimant
> can be expected to sit for approximately two hours
> during an eight-hour workday. There is no need for an
> assistive device.
>
>     She should not carry any weight greater than 10
> pounds. The claimant should have very limited bending,
> stooping, or crouching, for fear of worsening her back
> pain. There are no manipulative limitations. There
> are no relevant visual, communicative, or workplace
> environmental limitations.

Tr. 29-30. Because Dr. Brandt concluded claimant could sit,
stand, and walk for a combined total of only four hours per
workday, Dr. Brandt effectively concluded claimant was disabled,

i.e., claimant would be unable to work on a "regular and continuing basis".  <u>See</u> 20 C.F.R. § 404.1545(b)(RFC represents claimant's ability to work on a "regular and continuing basis"); <u>see also</u> S.S.R. 96-8p (defining "regular and continuing basis" as eight hours per day, five days per week).

1a.  Dr. Brandt's Opinion is Contradicted

Claimant argues Dr. Brandt's opinion is not contradicted because, according to claimant, no other examining or treating physician addressed claimant's cardiology records in addition to her orthopedic complaints.  The Commissioner argues that Dr. Brandt's opinion is contradicted by the opinions of the NEP.

Claimant is correct in stating "[i]t is well-established that the opinion of a nonexamining physician cannot by itself constitute substantial evidence that justifies the rejection of the opinion of either an examining physician or a treating physician."  Doc. 23, pg 3.  However, the NEP opinions here, while contradicting Dr. Brandt's opinion, are consistent with, and supported by, the opinions of the other examining physicians.

The NEP opined claimant was limited to "light" work.  Tr. 208.  Specifically, the NEP found claimant had no restrictions on stooping or crouching, could occasionally lift and/or carry 20 pounds, sit up to six hours per day, and stand and walk for up to six hours per day.  Tr. 204-05.  These findings each contradict Dr. Brandt's opinion that claimant should not carry more than 10

pounds, should limit stooping and crouching, could sit for
approximately two hours during an eight-hour workday, and stand
and walk for two hours during an eight-hour workday.

Beginning on January 22, 2003, Dr. Timothy A. Hill examined
claimant four times over four months for claimant's back and
thigh pain.[3]  Tr. 189-96.  Dr. Hill was aware of claimant's heart
condition, referencing the condition several times.  Id.  Indeed,
upon Dr. Hill's first examination of claimant, he mentioned
claimant's myocardial infarction and coronary catheterization.
Tr. 196.  After the final evaluation on May 22, 2003, Dr. Hill
stated that claimant had no residual disability and opined, "I
feel she is capable of regular activities, as far as her lumbar
strain."  Tr. 190.  Dr. Hill also limited his evaluation by
stating that claimant's cardiologist could possibly recommend
limitations due to claimant's heart condition.  Id.

Claimant points to no evidence (and I found none), of any
cardiologist placing limitations on claimant.  In fact, the ALJ
noted claimant's heart condition improved over time.  Tr. 20.
The ALJ noted an electrocardiogram ("ECG") performed in May of
2004 was "normal" for claimant's age.  Id.  In addition, as noted
by the ALJ, claimant was discharged from cardiac and pulmonary
rehabilitation due to her failure to keep or reschedule

--------

[3]Claimant's back and thigh injuries were work-related
injuries.  Claimant's heart condition was not work-related.  Dr.
Hill and Dr. Golden evaluated claimant's work-related injuries.

9 - OPINION AND ORDER

appointments.  Tr. 20, 423.  Thus, no limitations or results from
the rehabilitation are available.  Id.

Dr. Patrick F. Golden examined claimant on September 18,
2003.  Tr. 212.  The full extent of Dr. Golden's access to
claimant's cardiology records is not revealed in the record.
While Dr. Golden did diagnose claimant with myocardial infarction
(stable), he was evaluating claimant for the "accepted condition"
relating to her work-related injury.  Tr. 212-21.  Claimant's
"accepted condition" was "[a]brasion to the left thigh, coccygeal
contusion and lumbar strain."  Tr. 212.  However, Dr. Golden
referenced claimant's myocardial infarction and coronary
catheterization during his detailed description of claimant's
history and subsequent diagnosis.  Tr. 214-16, 220.  Ultimately,
Dr. Golden was unable to formulate claimant's RFC due to
"prominent functional overlay, characterized by pain behavior..."
Tr. 221.  However, Dr. Golden did state that *based solely on*
*claimant's subjective complaints of pain*, claimant could lift or
carry 10 pounds, and sit, stand, and/or walk for approximately
one hour consecutively.  Id.  Lastly, Dr. Golden opined, "[t]here
are no permanent restrictions in working the same number of hours
that were worked prior to the injury."  Tr. 222.

Dr. Sam Bartholomew examined claimant on February 5, 2004
(approximately three-and-one-half months after Dr. Brandt's
examination of claimant and approximately two months after the

first NEP opinion). Tr. 203-08, 237. The extent of Dr. Bartholomew's access to, and review of, claimant's medical records is unclear. Tr. 237-41. However, Dr. Bartholomew did note claimant's report of congestive heart failure and the accompanying symptoms, including edema in claimant's legs. Tr. 238. In addition, Dr. Bartholomew diagnosed claimant with congestive heart failure. Tr. 240. Dr. Bartholomew stated claimant could stand, walk, and sit for six hours each in an eight-hour workday. Tr. 240. Dr. Bartholomew stated claimant had no weight restrictions regarding lifting and carrying. <u>Id.</u>

Because the NEP opinions are supported by substantial evidence in the record, they may serve as specific and legitimate reasons for rejecting the opinion of Dr. Brandt. <u>Morgan v. Comm'r of Soc. Sec. Admin.</u>, 169 F.3d 595, 602 (9th Cir. 1999). In addition, Dr. Bartholomew's opinion directly contradicts Dr. Brandt's opinion. Unlike Drs. Hill and Golden, Dr. Bartholomew was not focusing on claimant's work-related injuries. Dr. Bartholomew was evaluating claimant's overall condition, which included her heart condition. In addition, Dr. Bartholomew examined claimant after Dr. Brandt. Claimant's argument that Dr. Brandt's opinion is uncontradicted is without merit.

1b. The ALJ Failed to Consider Dr. Brandt's Limitations

As stated above, the ALJ may reject the contradicted opinion of an examining physician by providing "specific and legitimate

reasons that are supported by substantial evidence in the record." Lester, 81 F.3d at 830-31.  An ALJ may provide "specific and legitimate reasons" for crediting one opinion over a conflicting opinion by summarizing the facts and conflicting evidence in a thorough manner, stating his interpretation, and making findings.  Magallanes, 881 F.2d at 751.

The ALJ, however, failed to mention or discuss any of Dr. Brandt's limitations.  The extent of the ALJ's discussion regarding Dr. Brandt's examination consists of:

> Dr. Darin Brandt performed a consultative examination
> in October of 2003.  He noted that the claimant has a
> history of myocardial infarction and congestive heart
> failure.  The claimant reported being placed on
> diuretics for fluid management.  She also described a
> history of pitting edema in her feet.  But, she
> reported increased symptoms when not taking diuretics.
> Dr. Brandt noted that the claimant has a history of
> degenerative disc disease.  Significantly, a clinical
> examination revealed negative straight-leg raising
> tests were bilaterally [sic].  Although the claimant
> reported back pain, there was no evidence of
> radiculopathy.  Muscle strength was normal.  Dr.
> Brandt's dianoses included: history of myocardial
> infarction and back pain, with evidence of mechanical
> back pain, discogenic versus facet joint related
> (Exhibit 8F).

Tr. 20.

The Commissioner argues that the ALJ "resolved the conflicts in the medical testimony by assigning Plaintiff a lesser residual functional capacity than the state agency physicians would have found, but a greater one than that assigned by Dr. Brandt."  Doc. 22. pg 6.  The Commissioner argues that the ALJ necessarily

considered, and subsequently rejected, Dr. Brandt's limitations
by finding that the claimant was not disabled.

However, there is no evidence in the record that the ALJ was
actually aware of the conflict the Commissioner indicates the ALJ
resolved.  In fact, as mentioned above, the ALJ never mentioned
or addressed any of Dr. Brandt's limitations.  While I am not
"deprived of [my] faculties from drawing specific and legitimate
inferences from the ALJ's opinion...", here I am unable to
determine the ALJ's intentions upon reviewing the record.
Magallanes, 881 F.2d at 755.

Based on the record, the claimant is correct in stating,
"...it does not appear that the ALJ actually considered the
limitations found by Dr. Brandt, as he did not acknowledge the
doctor's findings...."  Doc. 23, pg 2.  The ALJ has a duty to
evaluate every medical opinion received.  20 C.F.R. §
404.1527(d).  As stated above, the ALJ must also resolve
conflicts in the record.  Magallanes, 881 F.2d at 750.  This
omission cannot be considered harmless as the ALJ, upon
considering Dr. Brandt's limitations, could find the claimant
disabled.  Therefore, this case must be remanded so the ALJ may
consider and weigh Dr. Brandt's limitations.

2.  Claimant's Credibility

A claimant alleging disability on the basis of subjective
symptoms "must produce objective medical evidence of an

13 - OPINION AND ORDER

underlying impairment 'which could reasonably be expected to produce the pain or other symptoms alleged....'" Smolen v. Chater, 80 F.3d 1273, 1281 (9th Cir. 1996)(quoting Bunnell v. Sullivan, 947 F.2d 341, 344 (9th Cir. 1991)(en banc)). Absent evidence of malingering, the ALJ may reject claimant's testimony regarding the severity of the symptoms only by providing clear and convincing reasons.[4] Smolen, 80 F.3d at 1283-84. In addition, the ALJ's findings must be sufficiently specific to allow the reviewing court to determine the ALJ did not "arbitrarily discredit a claimant's testimony regarding pain." Bunnell, 947 F.2d at 345-46 (internal citation omitted).

In determining claimant's credibility, the ALJ may consider many factors including: ordinary techniques for determining credibility (such as the consistency of claimant's statements regarding pain and claimant's reputation for trustworthiness); claimant's failure to seek treatment or follow treatment plans; and the relationship between claimant's daily activities and claimant's testimony regarding pain. Smolen, 80 F.3d at 1284.

Claimant argues the ALJ failed to identify clear and convincing reasons for rejecting her testimony. Consequently,

---

[4]Although the Commissioner notes "the ALJ cited abundant evidence of malingering," the ALJ did not specifically make a finding of malingering. However, because the ALJ provided clear and convincing reasons for finding claimant not entirely credible, it is not necessary to determine if the record contained "evidence of malingering."

claimant argues her testimony regarding the frequent need to elevate her legs and the limiting effects of her anxiety attacks should be credited.

Here, the ALJ found claimant's medically determinable impairments could reasonably be expected to produce the alleged symptoms.  Tr. 18.  However, the ALJ found that "claimant's statements concerning the intensity, persistence and limiting effects of [the] symptoms are not *entirely* credible."  Id. (emphasis in original).  The ALJ gave two main reasons for finding claimant not entirely credible: multiple physicians suspected claimant of functional overlay; and claimant's failure to disclose her substance abuse disorder indicated drug seeking behavior.  Id.  Thus, the ALJ questioned all of claimant's self reporting.

Regarding claimant's functional overlay, the ALJ specifically pointed to the reports of Drs. Stephen Bartz, Hill, Golden, and John Dickinson.  Tr. 18.

Dr. Bartz treated claimant on December 12, 2002.  Tr. 146-48.  Dr. Bartz stated:

> This is a very puzzling clinical history.
> Ms. Cotter has a diffusely positive review of
> systems and physical exam and I suspect that
> there is substantial secondary gain, or at
> least there is substantial perceived
> secondary gain in her clinical presentation,
> given the workman's compensation claim
> pending and her history of narcotic use, but
> at the same time, the electrocardiogram is
> dramatically abnormal and is consistent with

           either myopericarditis or myocardial
           ischemia....

Id.

As a result of claimant's dramatically abnormal ECG, Dr. Bartz ordered a cardiac catheterization. Tr. 155. The cardiac catheterization revealed claimant's "left ventricular systolic function is severely reduced with an estimated ejection fraction of 35%." Id. Claimant was later diagnosed with congestive heart failure and open vessel anterior myocardial infarction. Tr. 169.

Claimant argues the subsequent diagnosis of congestive heart failure casts doubt on Dr. Bartz's opinion suspecting secondary gain. However, Dr. Bartz also stated claimant's symptoms were "[a]bsolutely diffusely positive and [did] not aid in the clinical evaluation." Tr. 147. One rational way of interpreting Dr. Bartz's opinion is that claimant's "absolutely diffusely positive" reporting of her symptoms was incongruent with what a physician would expect to see from someone suffering acute coronary syndrome. Thus, Dr. Bartz suspected substantial secondary gain. This interpretation is supported by substantial evidence as other doctors independently suspected claimant of functional overlay or secondary gain. Because the ALJ must resolve ambiguities and conflicts in the medical evidence, the ALJ's rational interpretation supported by substantial evidence in the record may not be disturbed. Magallanes, 881 F.2d at 750.

Dr. Hill examined claimant four times over four months,

16 - OPINION AND ORDER

concluding with an examination on May 22, 2003.  Tr. 189-99.  The
ALJ cited Dr. Hill's May 22, 2003 note, which stated:

> "Waddell's sign positive for pain with
> simulated rotation, light actual compression,
> positive for overreaction.  Positive for
> discrepancy between seated and supine
> straight-leg raising.  The patient tolerates
> 90° in a seated position, but only 30° in a
> supine position (right leg).  Positive for
> some give-way weakness.

Tr. 190.  Dr. Hill's impressions included "[i]nconsistent
findings on exam, suggestive of at least a partial functional
component."  Id.

Claimant argues that Dr. Hill was "focused entirely on
plaintiff's back condition, deferring to the treating doctor to
address the appropriateness of narcotics for other conditions."
Doc. 17, pg 18.  Dr. Hill did defer to claimant's cardiologist
regarding any limitations resulting from claimant's heart
condition.  Tr. 190.  However, Dr. Hill's opinion that claimant
exhibited signs of functional overlay was the direct result of
claimant's performance on tests administered by Dr. Hill.  For
example, Dr. Hill pointed to "inconsistencies" during claimant's
motor testing.  Tr. 189.  Dr. Hill then stated, "The patient
gives minimal effort when testing right ankle plantaflexion, for
example.  However, she is later able to walk on her toes,
indicating normal strength."  Id.  Dr. Hill also noted that
although claimant was "moving better" than during previous exams,
"[s]he still has significant posturing and pain behavior."  Id.

17 - OPINION AND ORDER

Dr. Hill's statements regarding functional overlay were the direct result of his independent clinical findings. Thus, Dr. Hill's statements provide clear and convincing reasons for finding claimant not credible.

The ALJ also cited Dr. Golden's opinion that "[d]uring the examination there were multiple manifestations of functional overlay and pain behavior." Tr. 18. In addition, the ALJ points to Dr. Golden's observation that Dr. Andrew Kokkino had previously stated that claimant's symptomology was disproportionate to the physical findings and the MRI. Id.

For the same reasons Dr. Hill's opinion regarding claimant's functional overlay and pain behavior is valid, Dr. Golden's opinion regarding claimant's reporting is valid. Dr. Golden's opinion relates, for the most part, directly to his physical examination of claimant. During the neurological examination, Dr. Golden noted that claimant's gait was characterized by a pronounced limp, which "varied in character from the three different times it was evaluated." Tr. 219. Claimant also exhibited "awkward gestures", interpreted by Dr. Golden as pain behavior. Id. Dr. Golden was ultimately unable to determine claimant's RFC due to "prominent functional overlay, characterized by pain behavior...." Tr. 221. Claimant's straight leg raising tests and range of motion in her back were both limited by functional overlay. Id. Dr. Golden could not

18 - OPINION AND ORDER

determine if claimant had a chronic condition due to "so much functional overlay in so much of the examination...." Id. Dr. Golden's opinion was based on independent clinical findings, and provides clear and convincing reasons for finding claimant not entirely credible.

Finally, the ALJ cites Dr. Dickinson's note stating "I am not certain about the possibilities for secondary gain." Tr. 18. To the extent the ALJ relied on Dr. Dickinson's note in determining claimant was not entirely credible, the ALJ erred. Dr. Dickinson examined claimant on December 8, 2002. Tr. 436. Claimant was admitted to the hospital on December 6, 2002, complaining of abdominal pain and vomiting. Tr. 438. An abdominal ultrasound and abdominal CT scan failed to reveal the source of claimant's symptoms. Id. However, on December 12, 2002, Dr. Bartz ordered a cardiac catheterization based on claimant's complaints and the abnormal ECG. Tr. 147-48. The ECG was performed on December 12, four days after Dr. Dickinson's note. Thus, unbeknownst to Dr. Dickinson, claimant was likely suffering from the early stages of her heart condition. Given the context, a note stating Dr. Dickinson was "not certain about the possibilities for secondary gain..." does not provide a clear and convincing reason for questioning claimant's credibility.

However, in light of the numerous other clear and convincing reasons provided by the ALJ in determining claimant's

credibility, any error made by the ALJ in relying on Dr.
Dickson's note in finding claimant not credible is harmless.  The
ALJ's reference to Dr. Dickson's note consisted of less than 3
lines out of nearly one page of reasons provided by the ALJ in
support of his finding that claimant was not credible.  Tr. 18.
Because the remaining reasons, as well as the ALJ's "ultimate
credibility determination," are adequately supported by
substantial evidence, this minor error is harmless.  <u>Carmickle v.
Comm'r of Soc. Sec. Admin.</u>, 533 F.3d 1155, 1162 (9th Cir. 2008).
The error does not negate the validity of the ALJ's determination
that claimant is not credible and does not require remand.  <u>See
Batson v. Comm'r of Soc. Sec. Admin.</u>, 359 F.3d 1190, 1197 (9th
Cir. 2004) (applying harmless error standard when one of the
several reasons supporting ALJ's adverse credibility finding was
invalid).

     In finding claimant not credible, the ALJ also cited
evidence in the record demonstrating claimant had "not been
completely candid with medical providers regarding her substance
abuse disorder."  Tr. 18.  Specifically, the ALJ points to the
July 31, 2002 note of Dr. Philip J. Johnson, M.D.  <u>Id.</u>  Claimant
presented to the emergency department complaining of chest pain.
Tr. 446.  Dr. Johnson noted that claimant was presently on
methadone, which was prescribed due to claimant's addiction to
Vicodin and Oxycodone.  <u>Id.</u>  Dr. Johnson noted claimant's

20 - OPINION AND ORDER

examination with Dr. Kenneth G. Starr one month earlier.  In that visit, claimant failed to mention her methadone prescription and was discharged with Vicodin after presenting for elbow pain.  <u>Id.</u> Dr. Starr noted, "[t]he patient has not taken any medication other than Motrin, which has not been helping much."  Tr. 453.

The ALJ found that Dr. Johnsons's comments "suggest that the claimant has engaged in drug seeking behavior.  This evidence, along with the opinions regarding the presence of functional overlay, calls into question the entirety of the claimant's self-reporting."  Tr. 18.

"Credibility determinations are the province of the ALJ." <u>Fair v. Bowen</u>, 885 F.2d 597, 604 (9th Cir. 1989).  The ALJ's findings, based on the reports of "functional overlay" and "drug-seeking behavior" are clear and convincing reasons for questioning claimant's credibility.  In addition, these reasons are specific enough to determine the ALJ did not act arbitrarily in questioning claimant's self-reporting.  The ALJ's credibility determination, supported by substantial evidence in the record, is appropriate and may not be second-guessed.  <u>Id.</u>

3.  <u>The ALJ's Step Five Determination</u>

At step five, the ALJ found claimant could perform the following occupations, each existing in significant numbers in the national economy: assembler; microfilm document preparer, and; bench assembler.  Tr. 23.  Claimant argues the ALJ failed to

21 - OPINION AND ORDER

prove claimant is capable of performing other work due to four errors: 1) the ALJ did not include the limitations identified by Dr. Brandt in claimant's RFC; 2) the ALJ did not include claimant's frequent need to elevate her legs in claimant's RFC; 3) the ALJ did not include the limiting effects of claimant's anxiety attacks in her RFC; and 4) the ALJ failed to address the effect of claimant's anxiety and affective disorders on her presentation to physicians.

As described above, the ALJ's failure to consider Dr. Brandt's limitations constitutes reversible error necessitating remand to allow the ALJ to properly consider Dr. Brandt's opinion.  Therefore, there is no need to address claimant's other allegations of step five error at this time.

### REMAND

The remaining question is whether the matter should be remanded for payment of benefits, or remanded for further proceedings.  "The decision whether to remand for further proceedings or simply to award benefits is within the discretion of this court."  McAllister v. Sullivan, 888 F.2d 599, 603 (9th Cir. 1989).  Where remand for further proceedings would simply delay the receipt of benefits, the court may reverse for an award of benefits.  McAllister, 888 F.2d at 603.

Remand for further proceedings is appropriate here because the ALJ never evaluated Dr. Brandt's limitations, and thus must

22 - OPINION AND ORDER

consider and weigh this evidence on remand. <u>See</u> <u>Salvador v.</u>
<u>Sullivan</u>, 917 F.2d 13, 15 (9th Cir. 1990); <u>see also</u> <u>McAllister</u>,
888 F.2d at 603.

**CONCLUSION**

The Commissioner's decision is affirmed in part, reversed in
part, and remanded for further proceedings as follows: the
Commissioner's determination that claimant is not credible is
based on substantial evidence, and is therefore, affirmed.  The
Commissioner's failure to consider Dr. Brandt's opinion regarding
claimant's limitations necessitates reversal and remand for
further proceedings.  Upon remand, the ALJ should consider the
limitations stated by Dr. Brandt and either accept those
limitations or provide specific and legitimate reasons for
rejecting them.  Finally, if Dr. Brandt's opinion should change
the ALJ's RFC determination or credibility determination, the ALJ
must conduct further proceedings as necessary.

IT IS SO ORDERED.

Dated this  24  day of August 2009.


                                    /s/ Ann Aiken
                                 Ann Aiken
                        United States District Judge



23 - OPINION AND ORDER